MARY McGARTLAND, plaintiff below, appellant, *v.* STEWARD and CLARK, defendants below, respondents.

On the common count for work and labor to recover for partial services under a special agreement not to be performed within one year, and not in writing, the defendant cannot give the special agreement in evidence, nor prove the terms of it as a defence against the action. Although the provision of the statute of frauds on the subject is that no action shall be brought whereby to charge any person upon any agreement not to be performed within the space of one year from the date thereof, unless the same shall be in writing &c., it applies as well to a defendant as to the plaintiff in an action, for the meaning and object of the prohibition is that the court shall not take cognizance of any such contract, unless the requirements of the statute have been complied with in the mode of making and evidencing it.

ON appeal from a justice of the peace. Pronarr in assumpsit with the usual pleas. The plaintiff had placed her son, Hugh McGartland, a minor, by a special verbal contract with the defendants, who owned and carried on an iron foundry, to learn the art, trade and business. By the terms of the agreement between the parties, the son of the plaintiff was to continue with and serve the defendants in the trade and business mentioned, for a term of three years, but to be boarded, clothed and maintained in the meantime by the plaintiff, who was to receive for his services from the defendants, $2 per week for the first year, $2 50 per week for the second year, and $3 per week for the third year. The wages, however, for the first year, estimated at $100, were not to be paid by the defendants to the plaintiff, until the son had served the full term of service agreed upon. The son commenced the service under the contract and continued to work for the defendants in their foundry about a year and six months, during which time the plaintiff had received of the defendants between sixty and seventy dollars for his services, when giving dissatisfaction to the foreman in the foundry by his indifference and negligence in some moulding he was engaged on, and by impertinent language

when reproved for it, he reported his misconduct to one
of the defendants who also reproved him and remarked
that if he did not mind what was said to him, he knew
what he could do; upon which he left the service of the
defendants, and had not since returned to it. It was also
proved that the plaintiff was displeased with the conduct
of her son and disapproved of his leaving the service of
the defendants, and twice made application to them to
receive him again under the agreement, but which they
refused to do.

There were two counts in the narr, one on the special
contract proved, and the other on a *quantum meruit.*

*McCaulley,* for the plaintiff, contended that she was
entitled to recover on the latter count for the work and
labor of her son during the first year he had been in the
service of the defendants, and for which she had received
nothing, so much as the jury might consider them reason-
ably worth for that year under the proof in the case ; and
that the fact that he left and abandoned their service be-
fore the expiration of the term agreed on, was no defence
to the action on this count, because it was not upon the
special contract, as it was not performed, and by its own
terms was not to be performed within one year, and was
therefore void, since it was not in writing and signed by
the parties to be charged therewith, but was entirely a
verbal agreement and nothing more.

*Gordon,* for the defendants, argued that this was sub-
stantially an action, the special count and agreement being
waived by the plaintiff, of indebitatus assumpsit for one
year's service and nothing more, and therefore the implied
contract of hire and service for one year and no more, on
which the common count of *quantum meruit* in indebitatus
assumpsit was founded, did not fall within the provision
of the statute of frauds referred to. And this was the
only matter now involved in the action. That by the
terms of the agreement, the wages estimated at $100 in

the aggregate for that year, were to be retained by the defendants as an indemnity to secure the services of the son for the residue of the whole term and were not to be paid, until the expiration of it, and indeed, not at all, if he failed to serve out the entire term, but having failed to do that and abandoned the service after the first year, it was forfeited by the terms of the agreement to the defendants, and could not be recovered in this, or any other form of action.

*Mc Caulley*, replied.

*The Court, Houston J.*, charged the jury, that if such was the verbal and special agreement between the parties that the son of the plaintiff was to serve the defendants in the manner stated and which was not disputed, and that the period of such service was by the terms of the agreement, to continue for a longer period than one year, and the wages for the first year were to be retained by the defendants and were not to be paid until he had served out the whole term agreed upon, as a pledge, or security for the continuation of his service during the residue of the term, then it was one entire contract, or agreement, and was not to be performed within one year, and as it was not in writing and there was no note, or memorandum of it signed by the parties, neither party under our statute of frauds, could maintain an action upon the agreement itself for any breach of it; and although it had been given in evidence, without objection from the other side, and all the terms of it were now familiar to the jury, yet as the point had now come up and the court was required to instruct them as to the law of the case, it was bound to say to them that as the agreement was not by the terms of it to be performed within a year, and it was but a verbal agreement merely, they could take no cognizance of it, and the case was therefore to be considered by them as if no special agreement whatever had been made between the parties in regard to the services in question, and for

which the plaintiff was now suing; because there was no legal and competent evidence before them of such a contract or agreement. Nor did it affect the principle that the special agreement had not been set up by the plaintiff as the foundation of her action in the case, but had been attempted to be set up on the other side, as a defence against it, with a view to defeat by means of the special terms and stipulations of it, and the forfeiture which the defendants contend had been incurred under it, the recovery of her present demand for the first year's services. For although the words of the statute, commonly called the statute of frauds in this case, are that " no action shall be brought whereby to charge any person upon any agreement that is not to be performed within the space of one year from the making thereof, unless the same shall be reduced to writing &c. ; yet the meaning and object of the provision is broader than the mere words of it literally import, because when properly considered and construed, the prohibition is general and signifies no less than this, that the courts of law in the State shall not take cognizance of any such agreement, unless the requirements of the statute have been complied with in the mode of making and evidencing it.

The declaration of the plaintiff contains two counts; one upon the special agreement, and the other on a *quantum meruit*. On the first she cannot maintain the action, or recover, for the reason already stated; but on the second, which is a common count for the work and labor of her son for one year, without any reference at all to the special, or actual agreement, she might recover, provided the jury were satisfied that any service during that year had been performed by her son for the defendants, such compensation as they might consider reasonable for such services, to be determined, however, without reference to any rate of wages stipulated to be paid for them, in the special agreement.

It is scarcely necessary for the court here to advert to the distinctions which exist in law in regard to the action

of assumpsit on a special contract, and an implied promise, or contract merely. As a general principle where there has been a special agreement, the parties must resort to their remedies upon and seek their redress under it, and cannot proceed upon the common counts; but when the contract of service has been entirely performed and executed under such a contract, and the wages only remain to be paid for it, the common indebitatus assumpsit count for work and labor may be maintained for the recovery of the money. And this too, notwithstanding the agreement might have been for more than a year, and was not in writing. So too where either party has partially performed the special agreement pursuant to the terms of it, but has been prevented from completing, or perfecting it, by the default, or misconduct of the other party, the party so interrupted and prevented from completing it, may recover on the common counts and in *quantum meruit*, for his partial services up to the time when he was stopped, whatever they were reasonably worth. Had the agreement in this case, been reduced to writing and had it been competent for the defendants to put it legally in evidence as a defence to the present demand of the plaintiff, we feel bound to say that it is not clear to our minds from the evidence, that it would have availed them for that purpose. For as private agreements of this kind seem to be increasing in frequency in some parts of the State, as substitutes for public indentures of apprenticeship, we think it but proper to remark, while we have no authority and no disposition to condemn them, where the tastes and inclinations of the parties mutually approve and prefer them, that they cannot be regarded as loose agreements which either party is at liberty to disregard, terminate or annul at his pleasure, or convenience, without the sanction and consent of the other. The master may have his security and indemnity against loss on his side, in the wages reserved; but if he sees proper for light, or insufficient causes, to discharge his *quasi* apprentice, and to refuse to complete the contract, the other

36

party has no redress but a suit at law. And in this case we are not satisfied that the defendants were justified upon the first act of disobedience and impertinence on the part of the plaintiff's son, in dismissing him from their service, or in telling him he knew what he could do, which he well understood, and left without the plaintiff's consent. Their agreement was with her, and not with him ; and yet they took upon themselves to dispense with his services for what appears to us to have been an insufficient cause, and to have terminated the contract, not only without her consent, but twice refused upon her application, to receive him back again into their service under the agreement, according to the evidence.